**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF GEORGIA**
**SAVANNAH DIVISION**

| | |
|---|---|
| TIMOTHY D. PEARSON,<br><br>Plaintiff,<br><br>v.<br><br>AARON L. HARRIS,<br><br>Defendant. | CIVIL ACTION NO.: 4:25-cv-317 |

# O R D E R

Plaintiff Timothy D. Pearson sued Defendant Aaron L. Harris for breach of promissory note, unjust enrichment, and attorneys' fees. (Doc. 1.) Before the Court is Defendant's Amended Motion to Dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2) and for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). (Doc. 8.) Alternatively, Defendant requests that the Court convert his Motion into one for summary judgment and grant him judgment as a matter of law. (Id.) Plaintiff filed a Response in opposition to Defendant's Motion. (Doc. 12.) For the reasons below, the Court **DENIES** Defendant's Amended Motion to Dismiss under Rules 12(b)(2) and 12(b)(6). (Doc. 8.) The Court also **DENIES** Defendant's request to convert his Motion into one for summary judgment. (Id.)

## BACKGROUND

The Court derives these facts from Plaintiff's Complaint and the parties' evidentiary submissions.[1] (Docs. 1, 8-2, 12-1 & 12-2.) Plaintiff is a resident of Savannah, Georgia. (Doc. 1,

[1] The Court considers evidentiary submissions only as to Defendant's Motion under Rule 12(b)(2). See Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino, 447 F.3d 1357, 1360 (11th Cir. 2006).

p. 1.) Plaintiff is the owner and CEO of F3EA, Inc. ("F3EA"), a government contracting company incorporated in Delaware and registered to do business in Georgia, with its principal place of business located in Savannah, Georgia. (Doc. 12, p. 2; doc. 12-1, p. 2.) Defendant is a resident of Lawton, Oklahoma. (Doc. 1, p. 1.) Defendant declares that he has never resided in Georgia, conducted business in Georgia, or otherwise had any systematic or continuous contacts with Georgia. (Doc. 8-2, p. 1.)

According to Plaintiff, Defendant introduced himself to Plaintiff through Plaintiff's neighbor, a resident of Savannah, Georgia, in June 2022. (Doc. 12-1, p. 2.) At Defendant's request, Plaintiff met with his neighbor, Defendant, and Defendant's business associates at F3EA's corporate offices in Savannah, Georgia, to discuss a business opportunity. (Id. at p. 3.) During the meeting, which lasted at least three hours, Defendant informed Plaintiff that he invented military equipment, had formed a company known as Viper Combat Systems, LLC ("Viper")[2] to manufacture, sell, and distribute his products, and was "seeking business partners who could help him bring his products to market." (Id.; doc. 12, p. 4.) Defendant also offered Plaintiff an ownership interest in Viper and offered to pay Plaintiff a consulting fee "to help him achieve his business goals." (Doc 12-1, p. 4.) At this point, Plaintiff understood that Defendant had requested the meeting "to seek [Plaintiff's] strategic and executive mentorship" because of F3EA's "significant federal government contracting experience." (Id. at p. 3.) Plaintiff also understood that Defendant "sought to leverage [Plaintiff's] reputation and existing relationships in Georgia" to expand his presence in the market and sought funding from Plaintiff "to build prototypes of the products he intended to produce." (Id.)

---

[2] Viper is an Oklahoma limited liability company that is not registered in or authorized to conduct business in Georgia. (Doc. 8-1, p. 1 n.1.)

After the meeting, Plaintiff and Defendant continued to negotiate a potential business relationship, communicating via "dozens of emails, at least two video conference calls that both lasted between fifty minutes and one hour, and at least one telephone call that lasted [forty-five] minutes." (Id. at p. 4.) To satisfy Defendant's funding request, Plaintiff offered him a personal loan. (Id.; see also doc. 1, p. 2.) After several weeks of negotiation, Defendant accepted Plaintiff's offer and the parties entered into a loan agreement for $300,000, plus interest, "to be paid as a balloon payment" on an agreed-upon maturity date. (Doc. 12-1, p. 4; doc. 1, p. 2; see also doc. 1-1.) The parties memorialized the loan with an Unsecured Promissory Note dated July 22, 2022 ("Promissory Note" or "Note"). (Doc. 12-1, p. 4; doc. 1, p. 2; see doc. 1-1.) The Note includes a choice-of-law clause, providing that "[a]ll questions concerning the construction and interpretation of this Note will be governed by the internal law, not the law of conflicts, of the State of Georgia." (Doc. 1-1, p. 4; see doc. 12-1, p. 5; doc. 1, p. 2.) The parties executed the Note via email, and, pursuant to its terms, Plaintiff wired Defendant $300,000 from his Georgia-based bank account the next day. (Doc. 12-1, pp. 4–5.) As they continued their business relationship, the parties "exchanged approximately 200 emails (if not more), shared dozens of phone calls, participated in weekly virtual meetings, and met twice in person in Savannah, Georgia." (Id. at p. 5.) Defendant also sent prototypes of his products to F3EA's offices in Georgia for Plaintiff's inspection and consideration. (Id.)

Plaintiff alleges that, on the maturity date, Defendant failed to pay the full amount due under the Note, which was $327,761.64 ($300,000 in principal and $27,761.64 in interest). (Doc. 1, p. 2.) According to Plaintiff, Defendant defaulted on the Note and has yet to cure the default by paying the owed amount, which has grown to over $370,317 due to interest. (Id. at pp. 2–3.) Further, Plaintiff alleges that Defendant has failed to provide quarterly and annual personal

financial statements to Plaintiff as the terms of the Note require. (Id. at p. 3.) Because of Defendant's failures to pay the full loan obligations and to provide personal financial statements, Plaintiff claims that Defendant breached the Promissory Note. (See generally id.)

Plaintiff filed this suit against Defendant on the basis of diversity jurisdiction. (Id. at p. 1.) In Counts I and II, Plaintiff claims that Defendant breached the terms of the Promissory Note by failing to pay the full amount due and by failing to provide his personal financial statements to Plaintiff. (Id. at pp. 4–6.) In Count III, Plaintiff brings a claim of unjust enrichment, alleging that Defendant has unjustly retained the benefit of Plaintiff's $300,000 payment, which was made under the promise of repayment on the agreed-upon maturity date. (Id. at p. 6.) Lastly, in Count IV, Plaintiff claims that he is entitled to attorneys' fees and expenses associated with his attempts to collect the alleged debt. (Id. at p. 7.) As a result, Plaintiff seeks damages in an amount exceeding $300,000 and requests that the Court compel Defendant to provide Plaintiff with all of his quarterly and annual personal financial statements since July 22, 2022. (Id.)

Defendant moves to dismiss the Complaint for lack of personal jurisdiction under Rule 12(b)(2) and for failure to state a claim upon which relief can be granted under Rule 12(b)(6). (Doc. 8.) In the alternative, Defendant requests that the Court convert his Rule 12(b)(6) Motion to Dismiss into one for summary judgment and grant him judgment as a matter of law. (Id.) In support, Defendant attaches a brief and his own affidavit in which he testifies that the transaction at issue is an equity investment with no debt obligations, that he never traveled to Georgia to conduct business with Plaintiff, and that there is parallel litigation related to this matter pending in Oklahoma courts. (Docs. 8-1 & 8-2.) Plaintiff filed a Response in opposition to Defendant's

Motion, attaching his own declaration and an alleged calendar invite for the June 2022 in-person meeting in Savannah, Georgia.[3] (Docs. 12, 12-1 & 12-2.) Defendant has not filed a Reply.

## DISCUSSION

### I. Defendant's Motion to Dismiss for Lack of Personal Jurisdiction

On a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), the plaintiff has the burden of establishing a prima facie case of jurisdiction. Oldfield v. Pueblo De Bahia Lora, S.A., 558 F.3d 1210, 1217 (11th Cir. 2009); Stubbs, 447 F.3d at 1360. "A prima facie case is established if the plaintiff presents enough evidence to withstand a motion for directed verdict." Madara v. Hall, 916 F.2d 1510, 1514 (11th Cir. 1990) (citation omitted). In evaluating a plaintiff's case, the Court must accept as true the allegations in the complaint. Stubbs, 447 F.3d at 1360 (citations omitted). When the defendant contests the allegations of the complaint through affidavits, "the burden shifts back to the plaintiff to produce evidence supporting personal jurisdiction, unless the defendant's affidavits contain only conclusory assertions that the defendant is not subject to jurisdiction." Id. When the plaintiff's complaint and supporting affidavits and defendant's affidavits conflict, the Court must "construe all reasonable inferences in favor of the plaintiff." Id.

For a defendant to be subject to personal jurisdiction, "the exercise of jurisdiction must (1) be appropriate under the state long-arm statute and (2) not violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution." Diamond Crystal Brands, Inc. v. Food

[3] In his Response, Plaintiff briefly states that Defendant admits in his affidavit "to being in breach of the Promissory Note and liable to Plaintiff pursuant to Count I and Count II," and that, as a result, "summary judgment in favor of Plaintiff is also proper" if the Court determines "it has personal jurisdiction over Defendant." (Doc. 12, p. 9.) It is unclear whether Plaintiff is attempting to move for summary judgment by this short paragraph alone and, even if so, Plaintiff's Response does not comply with Local Rule 56.1, which governs motions for summary judgment. S.D. Ga. L.R. 56.1. The Court thus does not consider this paragraph as a motion for summary judgment.

Movers Int'l, Inc., 593 F.3d 1249, 1257–58 (11th Cir. 2010) (quoting United Techs. Corp. v. Mazer, 556 F.3d 1260, 1274 (11th Cir. 2009)). Georgia's long-arm statute permits the exercise of jurisdiction over a nonresident who, personally or through an agent, (1) transacts any business within Georgia; (2) commits a tortious act or omission within Georgia; or (3) commits a tortious injury in Georgia caused by an act or omission outside Georgia if the nonresident regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from services rendered in Georgia. O.C.G.A. § 9-10-91(1–3). Put simply, a nonresident defendant is subject to jurisdiction only if its contact with Georgia gives rise to the plaintiff's claim. Id. Likewise, under the Due Process Clause, "states may exercise jurisdiction over only those who have established certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." Diamond Crystal Brands, Inc., 593 F.3d at 1267 (internal quotations omitted).

Defendant contends that he is not subject to the Court's jurisdiction under Georgia's long-arm statute or the Due Process Clause because he has transacted no business within Georgia or established any meaningful contacts with Georgia. (Doc. 8-1, pp. 3–5.) He argues that "all negotiations, execution, performance, and alleged nonperformance occurred . . . in Oklahoma, and nothing attributable to [Defendant] with respect to this transaction occurred in [Georgia]." (Id. at p. 4.) Further, he claims that his communications with Plaintiff "were incidental and not purposefully directed at Georgia." (Id.) In support, Defendant submits an affidavit stating that he was in Oklahoma when Plaintiff contacted him about a potential investment in Viper, that all negotiations and performance occurred in Oklahoma or via phone or email while he was physically located in Oklahoma, that he never traveled to Georgia to conduct business with Plaintiff, and that

he has not engaged in any specific acts in Georgia or purposefully directed activities toward Georgia related to this matter. (Doc. 8-2, p. 2.)

In response, Plaintiff states in his declaration that Defendant introduced himself to Plaintiff through Plaintiff's neighbor, a resident of Savannah, Georgia, and—at Defendant's request—the parties met in person at F3EA's corporate offices in Savannah, Georgia, for at least three hours to discuss forming a potential business relationship. (Doc. 12-1, pp. 2–4.) Plaintiff also testifies that, throughout their business relationship, "[Defendant] knew that [Plaintiff] was a full-time Georgia resident, worked in Georgia, and owned several companies based in Georgia." (Id. at p. 4.) Plaintiff wired Defendant the loan amount from his Georgia-based bank account and the parties continued to share hundreds of emails and dozens of phone calls, participate in weekly virtual meetings, and meet in person twice in Savannah, Georgia, in furtherance of Defendant's business pursuits. (Id. at p. 5.) Defendant also entered into an agreement with Plaintiff under the Promissory Note, which provides that it is governed by Georgia law. (Id.; see doc. 1-1.) Plaintiff argues that the evidence sufficiently supports jurisdiction under the first prong of Georgia's long-arm statute and the Due Process Clause. (Doc. 12, pp. 11–20.)

As outlined below, Plaintiff is correct, and Defendant is subject to the Court's jurisdiction. As to the conflicts between Plaintiff's declaration and Defendant's affidavit—including conflicts over how the business relationship began, how often the parties worked together in furtherance of Defendant's business pursuits, and whether Defendant traveled to Georgia to conduct business with Plaintiff—all reasonable inferences are construed for Plaintiff. See Stubbs, 447 F.3d at 1360. Accordingly, the Court may exercise personal jurisdiction over Defendant under both Georgia's long-arm statute and the Due Process Clause.

### A. Personal Jurisdiction Is Appropriate Under Georgia's Long-Arm Statute.

The first prong of Georgia's long-arm statute permits the exercise of jurisdiction over a nonresident who transacts any business within Georgia.[4] O.C.G.A. § 9-10-91(1). To satisfy this prong, a plaintiff must show that the defendant "has purposefully done some act or consummated some transaction in this state" and that "the cause of action arises from or is connected with such act or transaction." Diamond Crystal Brands, Inc., 593 F.3d at 1260, 1260 n.11 (emphasis omitted) (quotation omitted). The Eleventh Circuit instructs that the proper analysis "examine[s] all of a nonresident's tangible and intangible conduct," including "mail, telephone calls, and other 'intangible' acts" even when "the defendant is physically outside of [the forum state]." Id. at 1264.

Construing all reasonable inferences for Plaintiff, there is sufficient evidence to support Plaintiff's argument that "Defendant entered Georgia to pursue his business interests, formed and maintained a business relationship with a Georgia resident, executed a promissory note with that resident in furtherance of that desired business relationship," and as a direct result of those acts, received $300,000 from the resident's Georgia-based bank account, which forms the basis for Plaintiff's cause of action. (Doc. 12, p. 1.) The Georgia Court of Appeals provides that the "direct connection" between the execution of a promissory note and a suit to collect on that note "is so obvious as to require no elaboration." Ga. R.R. Bank & Tr. Co. v. Barton, 315 S.E.2d 17, 20 (Ga. Ct. App. 1984); see also id. at 19–20 (finding that the "[nonresident defendant's] execution of promissory notes to [resident plaintiff] in return for [plaintiff's] advancing him certain sums of

---

[4] In Diamond Crystal Brands, Inc., the Eleventh Circuit Court of Appeals found "instructive the literal definition of the words in the statute." 593 F.3d at 1264 n.18. It explained that "'[t]ransact' means 'to prosecute negotiations,' to 'carry on business,' 'to carry out,' or 'to carry on.' 'Any' means 'to any extent' or 'in any degree.' 'Business' means 'activity directed toward some end,' or . . . 'transactions, dealings, or intercourse of any nature.'" Id. (quoting Webster's Third New Int'l Dictionary 97, 302, 2425 (1993)).

money" satisfied O.C.G.A. § 9-10-91(1)). Georgia's long-arm statute thus permits jurisdiction over Defendant to the extent permitted by the Due Process Clause.

**B. Personal Jurisdiction Is Permitted by the Due Process Clause.**

The Court's exercise of jurisdiction also comports with constitutional due process. "[T]he Due Process Clause requires that the defendant's conduct and connection with the forum State be such that he should reasonably anticipate being haled into court there." Diamond Crystal Brands, Inc., 593 F.3d at 1267 (alteration adopted) (internal quotations omitted) (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474 (1985)). Accordingly, jurisdiction may be exercised over "only those who have established certain minimum contacts with the forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." Id. (alteration adopted) (internal quotations omitted) (quoting Helicopteros Nacionales de Colombia S.A. v. Hall, 466 U.S. 408, 414 (1984)). The parties do not dispute that if Defendant is subject to jurisdiction, he may only be subject to specific jurisdiction. (Doc. 8-1, p. 5; doc. 12, pp. 10–11.) "In specific jurisdiction cases, the 'fair warning requirement is satisfied if the defendant has purposefully directed his activities at residents of the forum and the litigation results from alleged injuries that arise out of or relate to those activities.'" Diamond Crystal Brands, Inc., 593 F.3d at 1267 (alteration adopted) (quoting Burger King Corp., 471 U.S. at 472–73). If a plaintiff makes this showing, the "defendant must make a 'compelling case' that the exercise of jurisdiction would violate traditional notions of fair play and substantial justice." Id. (citations omitted).

Although "entering a contract with a citizen of another state, standing alone, does not automatically satisfy the minimum contacts test," a contractual relationship can establish minimum contacts when "the [nonresident] defendant deliberately engaged in significant activities within a state or created continuing obligations with residents of the forum." Id. at 1268; see also id. ("[W]e

follow a 'highly realistic approach' that focuses on the substance of the transaction: prior negotiations, contemplated future consequences, the terms of the contract, and the actual course of dealing." (citation omitted)); id. at 1268–69 (in determining whether a nonresident purchaser is subject to jurisdiction in a seller's forum, courts have considered "a defendant's initiating the contractual relationship, visiting the plaintiff's factory to assess or improve quality, sending materials to the plaintiff for inspection[,] . . . establishing a relationship by placing multiple orders, [and] . . . negotiating the contract via telefaxes or calls with the plaintiff" (internal citations omitted)).

Here, the terms of the Note and course of dealing show that the transaction at issue involved purposeful contact with Georgia. As detailed above, Plaintiff asserts that Defendant initiated their business relationship and traveled to Georgia to meet with Plaintiff in furtherance of a business purpose. (Doc. 12, p. 17.) Defendant solicited funding from Plaintiff to build prototypes and sought Plaintiff's consultation based on his experience in government contracting. (Id. at pp. 4, 17.) While Defendant was in Oklahoma, he continued to pursue a business relationship with Plaintiff, consistently remained in contact with Plaintiff for that purpose, spent weeks negotiating with Plaintiff over the terms of the Promissory Note, and derived a significant economic benefit from Plaintiff under that Note, all while knowing that Plaintiff was a Georgia resident. (Id. at p. 17.) Also, although the Note's choice-of-law clause is not dispositive here, it still supports a finding of personal jurisdiction. See TRS & Assocs., Inc. v. Doc. Imaging Techs., Inc., No. 1:08-CV-03264-JOF, 2009 WL 2778256, at *8 (N.D. Ga. Aug. 25, 2009) (providing that "[a] choice of law clause is relevant to the personal jurisdictional analysis" and holding that personal jurisdiction exists where defendant "attempt[ed] to establish a continuing relationship with a Georgia resident" and "sign[ed] two agreements that are governed by Georgia law" (citing Burger King Corp., 471

U.S. at 482)). Plaintiff has therefore shown that Defendant purposefully established minimum contacts with Georgia such that he reasonably should have expected to be haled into a court in this forum as a result. (See doc. 12-1.)

Turning to the final step of this analysis, Defendant does not make a "compelling case" that the Court's exercise of jurisdiction would offend traditional notions of fair play and substantial justice. Indeed, Defendant does not seem to make much of a case at all. (See doc. 8-1.) As far as the Court can tell, his entire argument on this issue is that "specific jurisdiction fails because claims do not arise from or relate to any purposeful contacts with Georgia," so "any exercise of jurisdiction over [Defendant] would offend the traditional notions of fair play and substantial justice." (Id. at p. 5.) Defendant's blanket assertion conflates this issue with the minimum contacts analysis and fails to explain why the exercise of jurisdiction would be "unconstitutionally unfair." See Diamond Crystal Brands, Inc., 593 F.3d at 1274. Nevertheless, the Court has considered "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several states in furthering fundamental substantive social policies." Id. (internal quotations omitted) (quoting Burger King Corp., 471 U.S. at 477). Having weighed each of these factors, the Court concludes that exercising jurisdiction over Defendant would not violate traditional notions of fair play and substantial justice. See White House, Inc. v. Winkler, 415 S.E.2d 185, 187 (Ga. Ct. App. 1992) (exercising jurisdiction over nonresident defendant did not violate these notions where defendant's "consistent and purposeful personal dealings" with resident plaintiff resulted in "substantial benefits" to defendant and "induced substantial action" by plaintiff).

For these reasons, the exercise of specific personal jurisdiction over Defendant is in accordance with Georgia's long-arm statute and the Due Process Clause. Accordingly, the Court has proper jurisdiction over Plaintiff's claims against Defendant and **DENIES** Defendant's Amended Motion to Dismiss under Rule 12(b)(2). (Doc. 8.)

## II. Defendant's Motion to Dismiss for Failure to State a Claim

"To survive a motion to dismiss, a complaint must . . . state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotations omitted). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. When considering a Rule 12(b)(6) motion to dismiss, the Court must limit its consideration to the pleadings and attached exhibits and accept as true all facts set forth in the complaint, construing them in the light most favorable to the plaintiff. Bell Atl. Corp v. Twombly, 550 U.S. 544, 556 (2007); Wilchombe v. TeeVee Toons, Inc., 555 F.3d 949, 959 (11th Cir. 2009); Belanger v. Salvation Army, 556 F.3d 1153, 1155 (11th Cir. 2009). However, this tenet "is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft, 556 U.S. at 678.

The plausibility standard is "not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Id. (internal quotations and citation omitted). Dismissal under Rule 12(b)(6) is also permitted "when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist., 992 F.2d 1171, 1174 (11th Cir. 1993); see also Neitzke v. Williams, 490 U.S. 319,

326–27 (1989) (explaining that Rule 12(b)(6) allows a court "to dismiss a claim on the basis of a dispositive issue of law").

Defendant contends that the Complaint should be dismissed for failure to state a claim because Plaintiff fails to plausibly "allege a debt obligation and cannot state claims for breach or unjust enrichment." (Doc. 8-1, p. 2.) Defendant seems to argue that he did not intend to agree to the terms of the Promissory Note because the parties agreed that Plaintiff's $300,000 advance was an equity investment, "not a repayable loan with fixed debt obligations." (Id. at pp. 1–2.) As a result, "[t]here was no mutual intent by the parties for the repayment of principal plus interest as debt" and the Note "did not reflect the true substance of the parties' deal or the intent of the parties." (Id. at p. 2.)

However, as explained above, at the motion to dismiss stage, the Court accepts Plaintiff's factual allegations as true and construes them in the light most favorable to Plaintiff. Twombly, 550 U.S. at 556. Plaintiff alleges that the parties formed an agreement under the terms of the Promissory Note, and that Defendant breached that agreement by (1) failing to repay the $300,000 loan plus interest to Plaintiff and (2) failing to provide his personal financial statements as required by the Note. (Doc. 1, pp. 2–6.) In a separate count, Plaintiff alleges that Defendant has been unjustly enriched because he induced and accepted Plaintiff's payment of $300,000 under the promise of repayment within one year, and—having failed to repay those funds plus interest—he has retained the benefit of Plaintiff's payment. (Id. at p. 6.) These allegations are enough to state a claim for breach of contract and unjust enrichment under Georgia law.[5] See Bates v. JPMorgan Chase Bank, NA, 768 F.3d 1126, 1130 (11th Cir. 2014) (elements for breach of contract are "the (1) breach and the (2) resultant damages (3) to the party who has the right to complain about the

[5] The parties do not dispute that Plaintiff's claims are governed by Georgia law. (See generally docs. 1, 8-1 & 12.)

contract being broken" (citation omitted)); Clark v. Aaron's, Inc., 914 F. Supp. 2d 1301, 1309 (N.D. Ga. 2012) (elements for unjust enrichment are "that (1) a benefit has been conferred, (2) compensation has not been given for receipt of the benefit, and (3) the failure to so compensate would be unjust"). Defendant provides no additional explanation or authority to support dismissal under Rule 12(b)(6). (See generally doc. 8-1.) Accordingly, the Court **DENIES** Defendant's Amended Motion to Dismiss under Rule 12(b)(6). (Doc. 8.)

**III. Defendant's Request to Convert the Motion to a Summary Judgment Motion**

Alternatively, Defendant requests that the Court convert his Rule 12(b)(6) Motion to Dismiss into one for summary judgment and grant him judgment as a matter of law. (Id.) Under Federal Rule of Civil Procedure 12(d), a district court must convert a Rule 12(b)(6) motion to dismiss into one for summary judgment when matters outside the pleadings are presented to and not excluded by the court. "A court has discretion to consider matters outside the pleadings," but if it decides to do so, "it must convert the motion to dismiss into one for summary judgment." Salas as Tr. of Salas Child. Tr. v. Commonwealth Land Title Ins. Co., No. 22-12264, 2023 WL 6866620, at *2 (11th Cir. Oct. 18, 2023) (internal quotations and citations omitted); see also German v. Nationstar Mortg., LLC, No. 2:20-cv-033, 2020 WL 4905066, at *1 (S.D. Ga. Aug. 20, 2020) ("It is within the judge's discretion to decide whether to consider matters outside of the pleadings that are presented to the court." (quoting Jones v. Auto. Ins. Co. of Hartford, 917 F.2d 1528, 1531–32 (11th Cir. 1990))). In his Amended Motion to Dismiss, Defendant's attached affidavit states that Plaintiff's $300,000 payment was not advanced as "a loan," but as "Plaintiff's purchase of equity shares or membership interest in [Viper]." (Doc. 8-2, p. 2.) Defendant also testifies that "[t]here was no mutual intent for repayment of principal plus interest as a debt obligation; instead the advance was structured as an equity investment, conferring ownership

interest and assuming investment risk tied to the company's performance." (Id.) As a result, the "'Promissory Note' did not reflect the true substance or mutual intent of the parties; it was incidental to the equity investment nature of the transaction," and "any alleged nonpayment or withholding affected operations solely in Oklahoma." (Id.) In response, Plaintiff offers his declaration, which describes the nature of the alleged loan outlined in the Promissory Note. (Doc. 12-1, p. 5.)

The Court declines to convert Defendant's Rule 12(b)(6) Motion into one for summary judgment because it does not and need not consider Defendant's affidavit or Plaintiff's declaration to decide this matter. "Even without wading into the merits of [the] competing evidence, it is plain that these documents would serve as incomplete support for ruling on the merits of this case." Mize v. 300 "F" St., Inc., No. 2:21-cv-38, 2021 WL 5494790, at *2 (S.D. Ga. Oct. 13, 2021). The best course here is not to decide summary judgment at this early stage of the proceedings when discovery is incomplete. See id. ("Indeed, courts converting motions to dismiss into motions for summary judgment often afford the parties 'a reasonable opportunity for discovery.' That, of course, would be the consequence of denying the motion to dismiss." (internal quotations and citation omitted)). Accordingly, the Court **DENIES** Defendant's request to convert his Rule 12(b)(6) Motion to Dismiss into one for summary judgment. (Doc. 8.)

## IV. Potential Applicability of the First-to-File Rule

Lastly, Defendant argues that "[t]he Court should further find that the parallel or related Oklahoma proceedings . . . are the proper forum for the resolution of this matter." (Doc. 8-1, p. 5.) He asserts that "the subject matter of this litigation is already the subject of a case that has been pending for two years in the Oklahoma courts, . . . in the case of Viper Combat Systems, LLC v. Pearson (District Court in and for Comanche County, Oklahoma, Civil Action No. CV-2023-26)."

(Id. at p. 3; see also doc. 8-2, p. 3 (testifying that this matter relates to parallel litigation pending in an Oklahoma court).)

Defendant's statements reveal that there is an open issue as to whether the first-to-file rule applies here. "The first-filed rule provides that when parties have instituted competing or parallel litigation in separate courts, the court initially seized of the controversy should hear the case." Collegiate Licensing Co. v. Am. Cas. Co. of Reading, Pa., 713 F.3d 71, 78 (11th Cir. 2013). Thus, "where two actions involving overlapping issues and parties are pending in two federal courts, there is a strong presumption across the federal circuits that favors the forum of the first-filed suit under the first-filed rule." Id. (internal quotations omitted).

Defendant has asserted that the subject matter of this case is at issue in the case in Oklahoma and that the Oklahoma case has been pending for two years, which would make it older than this case. (See doc. 8-1, p. 3.) Because the first-to-file rule may impact the Court's exercise of jurisdiction over this case, the Court raises it *sua sponte*. See Aadyn Tech., LLC v. Pro. LED Lighting, Ltd., No. 14-CIV-61376-BLOOM, 2014 WL 12489975, at *3 (S.D. Fla. Dec. 10, 2014) ("Because the first-filed doctrine involves a court's exercise of jurisdiction, a court may (and indeed, should) raise the issue *sua sponte*."); see, e.g., Hartford Fire Ins. v. Harleysville Mut. Ins., 736 F.3d 255, 258 n.1 (4th Cir. 2013) ("the court was free to raise the issue of the first-to-file rule *sua sponte*"); Elliott v. Williams, 549 F. Supp. 3d 1333, 1339 (S.D. Fla. 2021) (raising first-to-file rule and transferring case); Strother v. Hylas Yachts, Inc., No. 12-80283-CV, 2012 WL 4531357, at *1 (S.D. Fla. Oct. 1, 2012) (dismissing case *sua sponte* under first-filed rule).

Accordingly, the Court **DIRECTS** Defendant to file an initial brief on whether and how the first-to-file rule applies here **within fourteen (14) days** of the entry of this Order and further **DIRECTS** Plaintiff to respond to Defendant's brief **within fourteen (14) days** of its filing.

## CONCLUSION

Based on the above, the Court **DENIES** Defendant's Amended Motion to Dismiss under Rules 12(b)(2) and 12(b)(6), (doc. 8), and **DENIES** Defendant's request to convert the Rule 12(b)(6) Motion to Dismiss into a motion for summary judgment, (id.). Further, the Court **DIRECTS** Defendant to file an initial brief on whether and how the first-to-file rule applies to this case within **FOURTEEN (14) DAYS** of the entry of this Order. The Court likewise **DIRECTS** Plaintiff to file a brief in response within **FOURTEEN (14) DAYS** of the filing of Defendant's initial brief.

**SO ORDERED**, this 13th day of October, 2026.

R. STAN BAKER, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA